UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

JOSE LUIS GORDILLO, FELIX SANTOS, JUAN COTE LEON, JORGE GALVEZ SIERRA, JOSE CANTO GOMEZ, and BERNARDO CABRERA individually and on behalf of all others similarly situated,

                                   Plaintiffs,                                        **17-CV-8460
                                                                                      (VSB)(SN)**

              -against-

20 E 49 RESTAURANT INC. d/b/a BURGER HEAVEN, EVNICK, INC. d/b/a BURGER HEAVEN, 9 E 53 RESTAURANT INC. d/b/a BURGER HEAVEN, and NICHOLAS CYPRUS, EVANS CYPRUS, DIMITRI DELLIS, and MARGUERITE LOUCAS, as individuals,

                                   Defendants.

-------------------------------------------------------------------X

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

HELEN F. DALTON & ASSOCIATES, P.C.
Roman M. Avshalumov, Esq.
James P. O'Donnell, Esq.
80-02  Kew Gardens Road, Suite 601
Kew Gardens, New York 11415
Tel.: (718) 263-9591

*Attorneys for Plaintiffs, the Putative Rule 23 Class, and the Putative FLSA Collective Action*

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT**………………………………………………………..1

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**…………………………1

     I.     PLAINTIFFS' ALLEGATIONS……………………………………………1

     II.    SETTLEMENT NEGOTIATIONS AND DISCOVERY…………………...3

     III.   FURTHER SETTLEMENT NEGOTIATIONS AND SETTLEMENT AGREEMENT………………………………………………………………3

     IV.   MOTION FOR PRELIMINARY APPROVAL AND DISSEMINATION OF NOTICES…………………………………………………………………4

     V.    SUMMARY OF PRIMARY SETTLEMENT TERMS……………………..4

**ARGUMENT**……………………………………………………………………………5

     I.     CLASS CERTIFICATION REQUIREMENTS OF RULE 23 ARE MET FOR SETTLEMENT PURPOSES…………………………………………………..5

     II.    THE CLASS ACTION SETTLEMENT IS PROCEDURALLY AND SUBSTANTIVELY FAIR……………………………………………………6

        A. Procedural Fairness……………………………………………………7

        B.    Substantive Fairness……………………………………………8

           1.  Further Litigation and Trial Would Be Complex, Costly, and Long (*Grinnell* Factor 1)…………………………………………………..9

           2.   The Class' Positive Reaction to the Settlement (*Grinnell* Factor 2)…………………………………………………………………..10

           3.   Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3)…………………12

           4.  Plaintiffs Would Face Risks of Liability and Damages if the Case Proceeded (*Grinnell* Factors 4 and 5)………………………………14

           5.   Establishing and Maintaining the Class Through Trial Presents Risk (*Grinnell* Factor 6)…………………………………………..16

           6.   Ability of Defendants to Withstand a Greater Judgment Is Not Determinative (*Grinnell* Factor 7)…………………………………..16

7.    The Settlement Amount Is Substantial in Light of the Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 9 and 9)……………………………………………………………..17

III.    THE NOTICE MATERIALS WERE ADEQUATE AND SATISFIED DUE PROCESS………………………………………………………………………18

IV.    THE COURT SHOULD APPROVE THE FLSA COLLECTIVE ACTION SETTLEMENT………………………………………………………………...19

V.    THE CLAIMS ADMINISTRATOR'S FEES SHOULD BE APPROVED…20

VII.    THE PROPOSED CLASS COUNSEL FEES SHOULD BE APPROVED..21

A.    Class Counsel Is Entitled to Attorneys' Fees of 33% of the Settlement Amount…………………………………………………………………………21

B.    The Percentage Method Is the Preferred Method For Awarding Attorneys' Fees in Common Fund Cases in the Second Circuit…………………………22

1.    Class Counsel's Time and Labor (*Goldberger* Factor 1)……….24

2.    Magnitude and Complexity of the Litigation (*Goldberger* Factor 2); Risk of Litigation (*Goldberger* Factor 3)………………………..25

3.    Quality of Representation (*Goldberger* Factor 4)………………26

4.    Fee in Relation to the Settlement (*Goldberger* Factor 5)……….27

5.    Public Policy Considerations (*Goldberger* Factor 6)…………...28

CONCLUSION……………………………………………………………………………..29

## TABLE OF AUTHORITIES

**CASES**

*Alleyne v. Time Moving & Storage Inc.,* 264 F.R.D. 41 (E.D.N.Y. 2010)……………….......23, 27

*Ballinger v. Advance Magazine Publishers, Inc.*, No. 13 Civ. 4036 (HBP), 2014 WL 7495092, at *6 (S.D.N.Y. Dec. 29, 2014)……………………………………………………………………...16

*Barrentine v. Ark.-Best Freight System, Inc.*, 450 U.S. 728 (1981)………………………………25

*Beckman v. KeyBank, N.A.*, 293 F.R.D. 467 (S.D.N.Y. 2013)………………………………11-12

*Behzadi v. International Creative Management Partners, LLC*, No. 14 Civ. 4382, 2015 WL 4210906, at *1 (S.D.N.Y. July 9, 2015)……………………………………………………….11, 27

*Caballero v. Senior Health Partners, Inc.*, No. 16 Civ. 0326 (CLP), 2018 WL 6435900, at *6 (E.D.N.Y. Dec. 7, 2018)…………………………………………………………………………27

*Castagna v. Madison Square Garden, L.P.,* No. 09 Civ. 10211, 2011 WL 2208614, at *1 (S.D.N.Y. June 7, 2011)………………………………………………………………………….24

*Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015)…………………………18

*City of Detroit v. Grinnell Corp*., 495 F.2d 448 (2d Cir. 1974)………………………………...8

*Clark v. Ecolab, Inc.*, No. 07 Civ. 8624 (PAC), 2009 WL 6615729, at *1 (S.D.N.Y. Nov. 27, 2009)………………………………………………………………………………………………6

*Clark v. Ecolab, Inc.*, No. 07 Civ. 8623 (PAC), 2010 WL 1948198, at *1 (S.D.N.Y. May 11, 2010)……………………………………………………………………………………………..22

*Cohan v. Columbia Sussex Management, LLC*, No. 12 Civ. 3203 (AT), 2018 WL 4861391, at *3 (E.D.N.Y. Sept. 28, 2018)……………………………………………………………..24, 27, 28

*Corte v. Fig & Olive Founders LLC,* No. 14 Civ. 7186 (KPF), 2015 WL 12591677, at *1 (S.D.N.Y. June 24, 2015)………………………………………………………………………….7

*Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172 (W.D.N.Y. 2011)……………………26

*Diaz v. East Locating Service, Inc.*, No. 10 Civ. 04082, 2010 WL 5507912, at *1 (S.D.N.Y. Nov. 29, 2010)…………………………………………………………………………………..22, 27

*Donnelly v. Peter Luger of Long Island, Inc.*, 13 Civ. 1377 (LDW)(ETB), 2014 WL 12769046, at *1 (E.D.N.Y. Nov. 13, 2014)…………………………………………………………………...11

*Flores v. Anjost Corp.*, No. 11 Civ. 1531, 2014 WL 321831, at *1 (S.D.N.Y. Jan. 29, 2014)……………………………………………………………………………………7, 13, 21

*Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290 (E.D.N.Y. 2015)…………7

*Goldberger v. Integrated Resources Inc.*, 209 F.3d 43 (2d Cir. 2000)…………………………22-27

*Henry v. Little Mint, Inc.*, No. 12 Civ. 3996, 2014 WL 2199427, at *1 (S.D.N.Y. May 23, 2014)……………………………………………………………………………………………13, 28

*Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91 (E.D.N.Y. 2015)………………………………..11

*Hernandez v. Merrill Lynch & Co.*, No. 11 Civ. 8472 (DCF), 2013 WL 1209563, at *1 (S.D.N.Y. Mar. 21, 2013)……………………………………………………………………………………16

*In re Giant Interactive Group, Inc.*, 279 F.R.D. 151 (S.D.N.Y. 2011)…………………………..17

*In re Telik, Inc. Securities Litigation*, 576 F. Supp. 2d 570 (2d Cir. 2008)………………………20

*Johnson v. Brennan*, No. 10 Civ. 4712 (CM), 2011 WL 4357376, at *3 (S.D.N.Y. Sept. 16, 2011)………………………………………………………………………………………………...12

*Karic v. Major Automotive Compcanies*, No. 9 Civ. 5708, 2015 WL 9433847, at *1 (E.D.N.Y. Dec. 22, 2015), *rep. & rec. adopted by* 2016 WL 323673, at *1 (E.D.N.Y. Jan. 25, 2016)……………………………………………………………………………………6, 9, passim

*Kiefer v. Moran Foods, LLC*, No. 12-CV-756 (WGY), 2014 WL 3882504, at *1 (D. Conn. Aug. 5, 2014)………………………………………………………………………………………………22

*Kochilas v. National Merchant Services, Inc.*, No. 14 Civ. 311, 2015 WL 5821631, at *1 (E.D.N.Y. Oct. 2, 2015)……………………………………………………………………………..21, 23

*Massiah v. MetroPlus Health Plan, Inc.*, 11 Civ. 5669 (BMC), 2012 WL 5874655, at *1 (E.D.N.Y. Nov. 20, 2012)…………………………………………………………………………...11

*Masters v. Wilhelmina Model Agency, Inc.*, 573 F.3d 423 (2d Cir. 2007)…………………..23, 27

*Montalvo v. Flywheel Sports, Inc.*, No. 16 Civ. 6269 (PAE), 2018 WL 7825362, at *1 (S.D.N.Y. June 6, 2018)………………………………………………………………………………………8

*Prabir v. Bukhara Indian Cuisine, Inc.*, No. 17 Civ. 3704 (HBP), 2019 WL 1129433, at *1 (S.D.N.Y. Mar. 12, 2019)………………………………………………………………………..6, 15

*Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 218 (S.D.N.Y. 2015)……………………………12, 13

*Saldana v. Middletown Car-G-Cam Uni Corp.*, No. 15 Civ. 3651 (NSR), 2015 WL 12591678, at *1 (S.D.N.Y. Sept. 23, 2015)……………………………………………………………………...6

*Sandoval v. Philippe North America Restaurants, LLC*, No. 16 Civ. 615, 2018 WL 1635034, at *1 (S.D.N.Y. April 4, 2018)……………………………………………………………………….6

*Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *1 (S.D.N.Y. Apr. 16, 2012)………………………………………………………………………………………………..13

*Siddiky v. Union Square Hospitality Grp., LLC*, No. 15 Civ. 9705 (JCF), 2017 WL 2198158, at *1 (S.D.N.Y. May 17, 2017)……………………………………………………………………………9

*Sierra v. Spring Scaffolding LLC*, No. 12 Civ. 5160 (JMA), 2015 WL 10912856, at *1 (E.D.N.Y. Sept. 30, 2015)…………………………………………………………………………………22

*Surdu v. Madison Global, LLC*, No. 15 Civ. 6567 (HBP), 2018 WL 1474379, at *1 (S.D.N.Y. Mar. 23, 2018)………………………………………………..………………………..18, 19, 26, 28

*Taft v. Ackermans*, No. 02 Civ. 7951 (PKL), 2007 WL 414493, at*1 (S.D.N.Y. Jan. 31, 2007)..26

*Vaccaro v. New Source Energy Partners L.P.*, No. 15 Civ. 8954 (KMW), 2017 WL 6398636, at *1 (S.D.N.Y. Dec. 14, 2017)…………………………………………………..………………………15

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d. Cir. 2005)………………....…7, 15, 22

*Willix v. Healthfirst, Inc.*, No. 07 Civ. 1132 (ENV)(RER), 2011 WL 754862, at *1 (E.D.N.Y. Feb. 18, 2011)…………………………………………………………………………………………27

*Wright v. Stern*, 553 F. Supp. 2d 337 (S.D.N.Y. 2008)…………………………………………12

*Yim v. Carey Limousine NY, Inc.*, No. 14 Civ. 5883 (WFK)(JO), 2016 WL 1389598, at *1 (E.D.N.Y. April 7, 2016)…………………………………………………………………………………7

*Zeltser v. Merrill Lynch & Co.*, No. 13 Civ. 1531 (FM), 2014 WL 4816134, at *8 (S.D.N.Y. Sept. 23, 2014)…………………………………………………………………………………28

*Zeltser v. Merrill Lynch & Co.*, No. 13 Civ. 1531, 2014 WL 2111693, at *1 (S.D.N.Y. May 12, 2014)…………………………………………………………………………………………8

## STATUTES & REGULATIONS

12 N.Y.C.R.R. § 146………………………………………………………………………………2

29 U.S.C. § 203………………………………………………………………………………2

## RULE

Fed. R. Civ. P. 23…………………………………………………………………………………..6

## PRELIMINARY STATEMENT

Plaintiffs submit this Memorandum of Law in support of their Unopposed Motion for Final Approval of the Class Action Settlement (the "Motion"). Plaintiffs respectfully request the Court grant final approval of the Settlement Agreement, which the Court preliminarily approved on December 17, 2019. ECF No. 77. For the reasons explained in detail below, as well as those set forth in the accompanying Avshalumov Declaration, the Court should approve the Settlement as a fair, reasonable, and adequate resolution of factual and legal disputes that was reached following arm's length negotiations between experienced attorneys with the assistance of an experienced and well-respected wage-and-hour mediator.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiffs respectfully refer the Court to their Unopposed Motion for Preliminary Approval and supporting documents, ECF Nos. 83 - 84, and to the Avshalumov Declaration for full recitations of the factual and procedural history of the Action. Below we provide the Court with a brief history of the claims asserted and proceedings prior to the parties achieving settlement.

## I.       Plaintiffs' Allegations

On April 10, 2019, Plaintiffs filed the operative Second Amended Complaint for this Action on behalf of themselves and all similarly situated Class Members employed at 9 E. 53 Restaurant, Inc. d/b/a Burger Heaven ("Burger Heaven"), located at 9 East 53rd Street, New York, New York 10022. ECF No. 36. Plaintiffs alleged violations of the

FLSA and the NYLL, claiming that Defendants (1) failed to pay the Class Members at least the statutorily-required minimum wage rate, in violation of the FLSA and NYLL; (2) failed to pay the Class Members the appropriate overtime rate for all hours worked in excess of forty per workweek, in violation of the FLSA and NYLL ; (3) failed to pay the Class Members spread-of-hours pay, in violation of the NYLL; and (5) failed to comply with the requirements of the NYLL with regards to the provision of wage statements and notices due to employees.

Specifically, Plaintiffs' Complaint alleged that Defendants were not entitled to apply the tip credit that is available under the FLSA and the NYLL because Defendants failed to meet the statutory notice prerequisites for doing so. *See* 29 U.S.C. § 203(m); 12 N.Y.C.R.R. § 146–1.3. Plaintiffs also alleged that Defendants improperly paid the non-tipped Class Members, *i.e.*, food preparers, dishwashers, delivery persons, cleaners and other kitchen workers, on a weekly salary basis rather than hourly wages as is required by law. Furthermore, Plaintiffs claimed that the Class Members were regularly required to work shifts exceeding ten hours in length but were not paid an additional hour of wages at the minimum wage rate, as required by the NYLL's spread-of-hours provision. Lastly, Plaintiffs alleged that Defendants did not provide Class Members with wage notices and wage statements compliant with the NYLL. In their Answer, Defendants denied Plaintiffs' allegations and maintain that their compensation practices were lawful. ECF No. 38.

## II.        Settlement Negotiations and Discovery

During discovery and negotiations, Counsel for Defendants produced hundreds of payroll records and time records pertaining to the employees of Burger Heaven. Avshalumov Decl. ¶ 8. Prior to the parties' mediation on September 19, 2019, Class Counsel, Helen F. Dalton & Associates, P.C. ("HFD"), submitted a detailed mediation statement that explained the claims and damages calculation including a Microsoft Excel spreadsheet. *Id.* ¶ 9. The spreadsheet, containing thousands of rows of data, itemized each category of damages on an annual basis and was created through careful analysis of records produced by both Defendants and Opt-in Plaintiffs and through extensive interviews with all of the Opt-in Plaintiffs *Id.* ¶ 9.

On September 19, 2019, the Parties attended a mediation before private mediator Martin F. Scheinman, Esq. of Scheinman Arbitration & Mediation Services. After numerous rounds of negotiations and with the assistance of Mr. Scheinman, the parties reached a settlement on a class action basis. *Id.*

## III.        Further Settlement Negotiations and Settlement Agreement

In the four months following the mediation, the Parties worked in good faith to draft the necessary documents for the Court's approval and continued to negotiate on the non-monetary terms of the Agreement. On January 14, 2020, the Parties filed a fully executed Agreement for the Court's approval. *ECF No.* 83; The Agreement provides that Defendants shall pay a maximum settlement amount of one million two hundred thousand dollars ($1,200,000.00) (the "Settlement Amount"). Avshalumov Decl. 11. At all times, settlement negotiations were conducted on an arm's-length basis. *Id.* at 13.

### IV.        Motion for Preliminary Approval and Dissemination of Notices

Plaintiffs filed their Unopposed Motion for Preliminary Approval on January 14, 2020. ECF No. 83. The Court preliminarily approved the Parties' Settlement on February 18, 2020 ("Preliminary Approval Order"). *ECF No.* 87. On May 5, 2020, the Parties provided the Claims Administrator with a list reflecting all contact information they possessed for the Class Members, including their last known mailing addresses and telephone numbers. *Id.* ¶ 29.

Per the Settlement Agreement, the Claims Administrator mailed the Notice Materials in English and Spanish to the Class Members on May 8, 2020. *Id.* ¶ 30. The Notice reflected each Class Member's estimated settlement share and explained how it was calculated; Class Members' rights and how to exercise them (*e.g.*, exclusion and objection); Class Members' right to be represented by HFD or to retain another attorney; Class Members' rights under the NYLL and WTPA, and that those rights will be released by taking no action; Class Members' rights under the FLSA, and that those rights will be released by cashing/depositing a Settlement Check; the nature of the Litigation, including Defendants' defenses; and that Class Members may contact Class Counsel, not the Court, with questions. *Id*. ¶¶ 37.

### V.        Summary of Primary Settlement Terms

The Primary settlement terms, subject to Court approval, are:

**Settlement Payment:** Defendants shall pay a maximum settlement amount of One Million Two Hundred Thousand Dollars ($1,200,000.00). ("Settlement Amount"). The Settlement Amount covers settlement payments to claimants (putative class members who return claim forms), attorney's fees and costs,

reasonable Claims Administrator's fees and costs, and Employer Payroll Taxes.

**Claims Administrator:** The parties have jointly designated Arden Claims Service as the third-party settlement Claims administrator ("Claims Administrator"). The Claims Administrator will be responsible for, *inter alia*, the mailing of Notices to all Class Members and distribution of Settlement Checks to Claimants. The Claims Administrator will be paid for its services from the Settlement Amount. The Claims Administrator estimates that its costs will not exceed $30,000.00.

**Payments to Counsel:** Of the QSF, Class Counsel shall be paid its attorneys' fees, $400,000.00, equal to 33.33% of the QSF. Avshalumov Decl. ¶ 48.

**Net QSF & Settlement Shares:** The "Net Settlement Fund" is the $770,000.00 remaining in the QSF after subtracting the Settlement Costs (*i.e.,* the $30,000.00 to the Claims Administrator), and Class Counsel's fees and costs (*i.e.,* $400,000.00). *See id.* §§ 21; *see also* Avshalumov Decl. ¶ 48. The Claims Administrator has calculated the exact Settlement Share of each Class Member after all costs in the Litigation were assessed. *See Id. at* 31. Each Class Member's Settlement Share was calculated by the Claims Administrator as follows: divide the Class Member's total points by the aggregate number of points accrued by all the Class Members; convert the result into a percentage; and multiply that percentage by the amount of the Net Settlement Fund. *See id.*

**NYLL Release:** All Class Members who did not timely opt-out of the Class will release Releasees of all Released State Law Claims. Ex. § 35.

**FLSA Release:** Each Claimant who cashes, deposits, receives, or otherwise negotiates any Settlement Check also releases Releasees from all Released Federal Law Claims. *Id.* 19.

**Taxes:** The Settlement Payments to Participating Claimants shall be allocated as Individual Settlement Amounts deemed fifty percent (50%) as W-2 wage income and the other fifty percent (50%) as 1099 interest and liquidated damage income.

## ARGUMENT

## I.        Class Certification Requirements of Rule 23 Are Met For Settlement Purposes.

Plaintiffs respectfully refer the Court to his Motion for Preliminary Approval, which explains in detail that all class action certification requirements of Rules 23(a) and

(b) are met here for settlement purposes. *See generally* ECF No. 83. That motion further explains that appointment of HFD as Class Counsel is proper. *Id.*

## II.      The Class Action Settlement Is Procedurally and Substantively Fair.

Having preliminarily approved the Parties' Settlement (ECF No. 87), the Court must now determine whether the proposed Settlement is substantively and procedurally "fair, adequate, and reasonable and not the product of collusion." Fed. R. Civ. P. 23(e).

Although approval of a Class Action Settlement is subject to the District Court's discretion, the Court must be mindful that "policy favors the settlement and compromise of class actions." *Karic v. Major Automotive Cos.*, No. 09 Civ. 5708 (CLP), 2016 WL 1745037, at *4 (E.D.N.Y. April 27, 2016); *see also Saldana v. Middletown Car-G-Cam Uni Corp.*, No. 15 Civ. 3651 (NSR), 2015 WL 12591678, at *1 (S.D.N.Y. Sept. 23, 2015) (noting the "law favors compromise and settlement of class actions" and stating courts should give "proper deference to the private consensual decision of the parties") (quoting *Clark v. Ecolab, Inc.*, No. 07 Civ. 8624 (PAC), 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009)). The "parties and their counsel are in a unique position to assess the potential risks of litigation, and thus district courts in exercising their discretion often give weight to the fact that the parties have chosen to settle." *Sandoval v. Philippe N. Am. Rests., LLC*, No. 16 Civ. 615, 2018 WL 1635034, at *2 (S.D.N.Y. April 4, 2018); *see also Prabir v. Bukhara Indian Cuisine, Inc.*, No. 17 Civ. 3704 (HBP), 2019 WL 1129433, at *2 (S.D.N.Y. Mar. 12, 2019) (stating "the Court is generally not in as good position as the parties to determine the reasonableness of an FLSA settlement"). "[W]hen

evaluating a settlement agreement, the court is not to substitute its judgment for that of the Parties, nor is it to turn consideration of the adequacy of the settlement 'into a trial or a rehearsal of the trial.'" *Yim v. Carey Limousine NY, Inc.*, No. 14 Civ. 5883 (WFK)(JO), 2016 WL 1389598, at *6 (E.D.N.Y. April 7, 2016).

Here, the Settlement is procedurally and substantively fair, reasonable, and the product of arm's-length negotiations between experienced wage-and-hour counsel.

### 1. Procedural Fairness.

In deciding whether a class settlement is procedurally fair, "courts examine the negotiation process leading to the settlement." *Flores v. Anjost Corp.*, No. 11 Civ. 1531, 2014 WL 321831, at *3 (S.D.N.Y. Jan. 29, 2014) (Torres, J.) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d. Cir. 2005)). A presumption of fairness arises where a settlement was "reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Id.* (internal quotation omitted). "A settlement like this one, reached with the help of a third-party neutral, enjoys a 'presumption that the settlement achieved meets the requirements of due process.'" *Corte v. Fig & Olive Founders LLC,* No. 14 Civ. 7186 (KPF), 2015 WL 12591677, at *2 (S.D.N.Y. June 24, 2015) (citation omitted). Factors relevant to determining whether a settlement is procedurally fair may include "the experience of counsel...and the coercion or collusion that may have marred the negotiations themselves[.]" *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 298 (E.D.N.Y. 2015) (citation omitted).

Here, the Parties were represented by counsel experienced in wage-and-hour class actions. Avshalumov Decl. ¶ 41. They reached a settlement after both parties produced hundreds of pages of payroll records and time records which Class Counsel analyzed to calculate damages. *Id.* ¶ 31. The Parties engaged in extensive and hard-fought arm's length negotiations before, during and after the mediation. Avshalumov Decl. ¶ 13 *see also Zeltser v. Merrill Lynch & Co.*, No. 13 Civ. 1531, 2014 WL 2111693, at *2 (S.D.N.Y. May 12, 2014) ("The assistance of an experienced mediator . . . reinforces that the Settlement Agreement is non-collusive.").

The Parties' "extensive negotiations on the terms of the agreement," before, during, and after the mediation, establish that the settlement is the product of procedural fairness. As the parties have worked collegially and in good faith to reach this settlement, there is no possibility that collusion or coercion could have marred the negotiations themselves.

2.    **Substantive Fairness.**

To determine whether a settlement is substantively fair, reasonable, and adequate, courts in the Second Circuit use the nine-factor test from *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). *See, e.g.*, *Montalvo v. Flywheel Sports, Inc.*, No. 16 Civ. 6269 (PAE), 2018 WL 7825362, at *2 (S.D.N.Y. June 6, 2018) (providing the nine-factor test from *Grinnell* to determine the "substantive fairness of the [FLSA] agreement").

The *Grinnell* factors are (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings

and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the Defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell,* 495 F.2d at 463. Here, we analyze each factor of the Grinnell test, all of which are in support of the Parties' contention that the settlement is substantively fair, reasonable, and adequate.

1. **Further Litigation and Trial Would be Complex, Costly, and Long (Grinnell Factor 1)**

The Settlement avoids further litigation, additional discovery (in particular, alleviating the need for upwards of fifty or more depositions), motion practice, trial, and possible appeals, all of which will be significantly expensive and time-consuming. Since the filing date of November 2, 2017, the Litigation has been ongoing for over two-and-a-half years. *See, e.g.*, Avshalumov Decl. ¶ 4. As courts recognize, most "class actions, especially in the context of FLSA claims, are inherently complex." *Karic*, 2016 WL 1745037, at *5. Therefore, "settlement avoids the costs, delays and multitude of other problems associated with them." *Siddiky v. Union Square Hospitality Grp., LLC*, No. 15 Civ. 9705 (JCF), 2017 WL 2198158, at *4 (S.D.N.Y. May 17, 2017) (citation omitted). This case is no exception, as there are approximately 105 Rule 23 Class Members and claims have been brought under both federal and state statutes.

The Parties have already undertaken considerable expense in litigating this matter. The review of Defendants' records and calculation of the Class Members' damages required language translation and many months of analysis. Class Counsel also spent significant time conducting multiple, extensive interviews with every Opt-in Plaintiff prior to the mediation. Avshalumov Decl. ¶ 9. Further litigation without settlement would ostensibly result in additional costs and delay. Were the case to continue, further document production and analysis would be needed. Depositions would be required by both sides, including depositions of the Plaintiffs, the Defendants, and members of Defendants' management team. Plaintiffs would move for class and collective certification, which Defendants would vigorously oppose. And, to the extent certification were granted and any dispositive motions denied, preparing and putting on evidence on the pertinent factual and legal issues would consume tremendous amounts of time and resources for both sides, as well as requiring substantial judicial resources to adjudicate the Parties' disputes. A fact-intensive trial would require extensive testimony by Defendants, Plaintiffs, and numerous Class Members. Litigation over attorneys' fees could follow. Any judgment could be appealed, thereby extending the duration of the litigation. This Settlement, on the other hand, makes monetary relief available to Class Members in a prompt and efficient manner and avoids the aforementioned risks and delay. Therefore, the first *Grinnell* factor weighs in favor of approval of the Settlement.

**2.        The Class's Positive Reaction to the Settlement (*Grinnell* Factor 2)**

"The reaction of Class Members to the settlement is the most significant factor in considering the fairness of the Settlement Agreement." *Karic*, 2016 WL 1745037, at *5.

On May 8, 2020, the Notice Packet was mailed via First Class Mail to 102 Class Members contained in the Class List for whom addresses were available. A postage pre-paid, pre-addressed return envelope was included with each Notice Packet. Declaration of Angela Ferrante Regarding Notice and Settlement Administration ("Ferrante Decl."), ¶ 7.

The Claims Administrator received twenty-nine (29) Notice Packets as undeliverable, but performed an advanced address search on these addresses by using LexisNexis, which helped them locate twenty (20) updated addresses. The Claims Administrator promptly re-mailed Notice Packets to Class Members to those updated addresses. Of those, six (6) were returned undeliverable a second time. Ferrante Decl. ¶ 8. Ultimately, the number of Class Members who received Notice Packets was eighty-nine. Ferrante Decl. ¶ 9.

Between the mailing of the Notice Packets and the close of the claim-submission period on July 7, 2020, the Claims Administrator received forty-six (46) valid Claim Forms, with all of those participating Claimants to receive their portion of the Net Settlement Amount, representing approximately 45% of the Class. As of this date, Arden has not received any requests for exclusion from the Settlement or any objections to the Settlement. Ferrante Decl. ¶¶ 10-12.

Accordingly, the Claims Administrator will proceed to mail checks to the forty-six (46) Class Members, who will collectively be paid their proportionate amount of the Net Settlement Fund, which will be $516,764.94 (approximately 68% of the Net Settlement Fund). Ferrante Decl. ¶13. The highest claimant will receive $15,888.34 and the average claim payment is $11,299.24. Ferrante Decl. ¶ 14.

11

We believe this supports that the Class reaction to the settlement is "positive." *See Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91, 100 (E.D.N.Y. 2015) (finding 20 percent participation rate "well above average in class action settlements"); *Massiah v. MetroPlus Health Plan, Inc.*, 11 Civ. 5669 (BMC), 2012 WL 5874655, at *4 (E.D.N.Y. Nov. 20, 2012) (collecting cases finding average class action participation rates range from 10% to 33%). Furthermore, no Class Members opted out and no one has objected to the proposed Settlement. Avshalumov Decl. ¶ 39. "'The fact that the vast majority of class members neither objected nor opted out is a strong indication' of fairness." *Donnelly v. Peter Luger of Long Island, Inc.*, 13 Civ. 1377 (LDW)(ETB), 2014 WL 12769046, at *5 (E.D.N.Y. Nov. 13, 2014); *see also Behzadi v. Int'l Creative Mgmt. Partners, LLC*, No. 14 Civ. 4382, 2015 WL 4210906, at *2 (S.D.N.Y. July 9, 2015) (noting "reaction to the settlement was positive [because] [n]o Class Member objected to the Settlement, and only 24 Exclusion Forms were timely submitted"); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 475 (S.D.N.Y. 2013) (granting final approval where no class member objected to the settlement and eight out of 1,735 class members opted out, noting "[t]his favorable response demonstrates that the class approves of the Settlement and supports final approval"); *Wright v. Stern*, 553 F. Supp. 2d 337, 344–45 (S.D.N.Y. 2008) (approving settlement where 13 out of 3,500 class members objected and 3 opted out).

3.     **Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (Grinnell Factor 3)**

While completing class discovery and preparing this case through trial would require hundreds of additional hours, the informal discovery the parties have undertaken

is sufficient to warrant final approval of the Settlement. When considering this factor, "the question is whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths and defenses asserted by the defendants, and the value of plaintiffs' causes of action for purposes of settlement." *Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 218 (S.D.N.Y. 2015) (internal quotation omitted); *see also Beckman*, 293 F.R.D. at 475 (granting final approval where "[p]laintiffs obtained sufficient discovery to weigh the strengths and weaknesses of their claims and to accurately estimate the damages at issue," having "participat[ed] in a day-long mediation [that] allowed them to further explore the claims and defenses").

Here, the Parties' discovery is sufficient. HFD conducted a thorough investigation into the claims and defenses. Avshalumov Decl. ¶ 44. HFD reviewed hundred of pages of documents that Defendants produced, prepared a comprehensive damages analysis, and evaluated the strengths and weaknesses of the claims by interviewing the Opt-in Plaintiffs prior to mediation. In light of the voluminous records at issue, the Parties agreed to use samplings to calculate damages for settlement purposes. *See, e.g.*, *Johnson v. Brennan*, No. 10 Civ. 4712 (CM), 2011 WL 4357376, at *3 (S.D.N.Y. Sept. 16, 2011) (approving class settlement based on representative sample of employee pay records). The Parties participated in a mediation with an experienced, highly regarded neutral third-party mediator during which they engaged in a vigorous exchange regarding their respective claims and defenses. *Id*. ¶¶ 11.

Based on these circumstances, the Parties were well equipped to evaluate the strengths and weaknesses of their respective positions and so this factor weighs in favor

of final approval. *Karic*, 2016 WL 1745037, at *6 (favoring settlement approval where "thousands of pages of records from defendants" were produced, allowing the parties to "appreciate the merits of the case"); *Raniere*, 310 F.R.D. at 218 (approving settlement where "less than extensive" discovery permitted plaintiffs to "estimate" damages and evaluate weaknesses in case); *Flores*, 2014 WL 321831, at *5 (finding third *Grinnell* factor in favor of final approval where counsel gathered all information needed to "weigh the strengths and weaknesses of [Class Members'] claims and to accurately estimate the damages at issue"); *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *8 (S.D.N.Y. Apr. 16, 2012) (granting final approval where the parties exchanged documents and plaintiffs' counsel interviewed class members).

### 4.  Plaintiffs Would Face Risks of Liability and Damages if the Case Proceeded (Grinnell Factor 4 and 5)

While Plaintiffs and Class Counsel believe Plaintiffs' claims have merit and were asserted in good faith, they also recognize Defendants have experienced and dedicated counsel who raised considerable defenses to liability and damages. "In weighing the risks of establishing liability and damages, the Court 'must only weigh the likelihood of success by the Plaintiff class against the relief offered by the settlement.'" *Henry v. Little Mint, Inc.*, No. 12 Civ. 3996, 2014 WL 2199427, at *8 (S.D.N.Y. May 23, 2014) (McMahon, D.J.)

Plaintiffs claimed that Defendants paid non-exempt, non-managerial employees, namely food preparers, dishwashers, delivery persons, cleaners and other kitchen workers, on a salary basis. Defendants dispute this claim and take the position that all

non-exempt employees were paid in full for all hours even those in excess of forty per week. Extensive testimony would be necessary to establish liability and damages on these claims, which currently accounts for the majority of the Class's damages in Plaintiffs' damages calculations. If Defendants succeeded on their defenses, the Class Members' highest possible damages would be significantly reduced.

Defendants also argue that even assuming their wage practices violated the labor laws, Plaintiffs and the Class Members are not entitled to liquidated damages because Defendants acted in good faith and without a willful intent to violate the law. The Court could credit Defendants' arguments and deny Plaintiffs liquidated damages. In light of the defenses available to Defendants and the fact-intensive nature of proving liability under the FLSA and NYLL, a trial on the merits could pose substantial risks to Plaintiffs as to both liability and damages. While Plaintiffs believe their claims are meritorious, HFD is experienced and pragmatic and are cognizant of the fact that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are uncertain.

Regardless of the perceived strength of Plaintiffs' case, liability is "no sure thing." *Wal-Mart*, 396 F.3d at 118. HFD also recognizes Defendants have presented potentially dispositive arguments posing a significant risk to Plaintiffs' class claims. The proposed settlement "provides for relief now, not some wholly speculative payment of a hypothetically larger amount years down the road." *Id.* Furthermore, "[t]he question in assessing the fairness of a class action settlement is not whether the settlement represents the highest recovery possible . . . but whether it represents a reasonable one in light of the many uncertainties the class faces." *Prabir*, 2019 WL 1129433, at *3. "Settlement eliminates the risk, expense, and delay inherent in the litigation process." *Hernandez v.*

*Merrill Lynch & Co.*, No. 11 Civ. 8472 (DCF), 2013 WL 1209563, at *6 (S.D.N.Y. Mar. 21, 2013). Given the proposed Settlement alleviates all such uncertainty, the fourth and fifth *Grinnell* factors weigh in favor of final approval.

5.      **Establishing and Maintaining the Class Through Trial Presents Risk (Grinnell Factor 6)**

The risks of obtaining class certification and maintaining class and collective certification through trial also support final approval. *See Vaccaro v. New Source Energy Partners L.P.*, No. 15 Civ. 8954 (KMW), 2017 WL 6398636, at *5 (S.D.N.Y. Dec. 14, 2017) ("The process of class certification would have subjected Plaintiffs to considerably more risk."). Although Plaintiffs and their counsel believe that they could obtain class certification in a contested proceeding, they recognize that this is far from a guarantee.

If the Court were to deny approval of the Settlement, Defendants would contend that litigation of the Class's claims together would not be manageable or appropriate. Similarly, Defendants would contend that class certification is not appropriate because the claims of certain Class Members vary, as some were paid differently than others.

Furthermore, as part of the settlement and only for the purposes of settlement, Defendants have agreed not to contest that the employees of Burger Heaven are similarly situated. However, were this case to go to trial, Defendants would contend that class certification is not appropriate. Thus, this factor also weighs in favor of final approval.

6.      **Ability of Defendants to Withstand a Greater Judgment Is Not Determinative (Grinnell Factor 7)**

16

Defendants' ability to withstand a greater judgment has been raised by defense counsel. However, even if Defendants could withstand a greater judgment, "this fact, by itself, however, does not render the proposed settlement unfair." *Ballinger*, 2014 WL 745092, at *6; *see also Frank*, 228 F.R.D. at 186 (citations omitted) ("[D]efendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair.") Also, it should be noted that Burger Heaven is now permanently closed and is no longer an operating business bringing in revenue. As such, this factor also favors approval.

### 7.    The Settlement Amount Is Substantial in Light of the Possible Recovery and the Attendant Risks of Litigation (Grinnell Factors 8 and 9)

The settlement amount represents substantial value given the risks of litigation, even though the recovery could be greater if plaintiffs prevailed and maintained a class through trial and on appeal. "[T]here is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Hernandez v. Merrill lynch & Co.,* No. 11 Civ. 8472 (DCF), 2013 WL 1209563, at *6 (S.D.N.Y. Mar. 21, 2013) (citing *Frank* 228 F.R.D. at 186). This court has further stated that there is no set mathematical equation used to determine whether a settlement amount is reasonable. *Id.*

"[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery. *Grinnell corp.,* 495 F.2d at 455, n.2. The settlement is reasonable because it is a compromise of hotly disputed matters, providing significant benefits to Class Members.

17

Assuming that the case went to trial as a class and collective action, Plaintiffs risk losing on all of their claims, which would result in no recovery. In the alternative, Plaintiffs may prevail on some or all of their claims. The amount of recovery cannot be predicted, which is why the settlement is appropriate.

Given the attendant risks of litigation, even though recovery could potentially be greater if Plaintiffs' claims succeeded at trial, survived appeal, this settlement provides the Plaintiffs and putative class members with a substantial recovery without the aforementioned risks. *Karic v. major Auto Cos.,* No. 09 Civ. 5708 (CLP), 2016 WL 1745037, at *7 (E.D.N.Y. April 27, 2016) ("Courts have found settlement funds representing far less than the maximum possible recovery to be reasonable.") *see also In re Giant Interactive Grp., Inc.,* 279 F.R.D. 151, 162 (S.D.N.Y. 2011) (finding settlement fund reasonable when it amounted to 16.5% of maximum possible recovery). Here, the settlement provides much more than a fraction of the potential recovery and "provides a meaningful benefit to the class members, when considered against the obstacle of proving the Class members' claims." *Id.*

In sum, the *Grinnell* factors all weigh in favor of issuing preliminary approval of the Settlement Agreement.

### III.  The Notice Materials Were Adequate and Satisfied Due Process

The Claims Administrator sent the Notice Materials in English and Spanish by first class mail to all Class Members for whom it had addresses. Avshalumov Decl. ¶ 31. As the Court found in the Preliminary Approval Order, the Notice Materials were adequate and satisfied due process requirements. ECF No. 34. The Notice Materials were carefully tailored to meet all of the requirements of this Circuit and were further revised

according to Your Honor's instructions during the February 13, 2020 telephonic conference.

### IV. The Court Should Approve the FLSA Collective Action Settlement

Plaintiffs also request the Court approve the settlement of the FLSA claims on a collective action basis. "A settlement of an FLSA collective action is not effective unless it is approved by either a district court or the United States Department of Labor." *Surdu v. Madison Global, LLC*, No. 15 Civ. 6567 (HBP), 2018 WL 1474379, at *6 (S.D.N.Y. Mar. 23, 2018) (citing *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 200 (2d Cir. 2015)). If the *Grinnell* factors are met, the standards for settlement approval under the FLSA will "necessarily" also be satisfied. *Id.* "The burden [for FLSA settlement approval] is significantly less than that required to sustain a class certification motion under Rule 23 because the FLSA's opt-in provision merely provides an opportunity for potential Plaintiffs to join the action and is only a preliminary determination as to which potential Plaintiffs may in fact be similarly situated." *Karic v. Major Automotive Cos.*, 799 F. Supp. 2d 219, 224 (E.D.N.Y. 2011); *see also Surdu v. Madison Global, LLC*, No. 15 Civ. 6567 (HBP), 2018 WL 1474379, at *6 (S.D.N.Y. Mar. 23, 2018) (reasoning FLSA actions do not implicate due process concerns as do Rule 23 class actions because "the failure to opt in to an FLSA collective action does not prevent a plaintiff from bringing suit at a later date").

For the reasons discussed above, and in the Motion for Preliminary Approval (ECF No. 83) the Settlement should be approved. As noted, this Settlement was the result of extensive arm's-length negotiations between experienced wage-and-hour counsel.

The Notices informed Class Members in English and Spanish that they had the opportunity to object or otherwise opt-out of the settlement, attend the Fairness Hearing, and that their NYLL rights would be released unless they objected or excluded themselves from the Settlement. ("[If] you do nothing, you will not receive any money from this Settlement, but you will still release the claims covered by the releases set forth in the settlement to the maximum extent permitted by law"), ¶ 16 ("You are not required to attend the Fairness Hearing, but are welcome to do so at your own expense if you wish. Class Counsel will represent you at the hearing, unless you have opted-out of the action."), ¶¶ 21 (explaining opt-out and objection process), ¶¶ 14 (explaining that more details are available by contacting Class Counsel). By opting-in to this Litigation, the Claimants will receive a Settlement Check. In exchange, they will release their claims under the FLSA against Releasees. *Id.* §§ 16. Only Class Members who opt-in and receive a Settlement Check will release their FLSA claims.

For all these reasons, approval of the FLSA settlement is warranted.

## V.    The Claims Administrator's Fees Should Be Approved

Pursuant to the Settlement Agreement, the Parties agreed to retain Arden Claims Service LLC to administer the Settlement. Avshalumov Decl. ¶ 29. As part of the agreement reached on September 19, 2019, the Parties agreed to pay Arden a total of $30,000.00 for their services, including mailing notices to all Class Action Members,

20

following up on undeliverable mailing notices, and distributing all checks to members who opt-in to the settlement and to Class Counsel. Throughout this process, a dedicated team from Arden has remained in constant contact with the Parties, quickly mailing out the Notice Materials upon receiving the Class contact information, and responding promptly to all questions and concerns raised by the Parties. The work performed by the Claims Administrator is outlined in the attached declaration from Angela Ferrante, Chief Operating Officer of Arden Claims Services LLC.

For the substantial amount of work that it has performed and will continue to perform, the Parties respectfully request that the Court approve a fee of $30,000.00 be paid to the Claims Administrator.

## VI.    The Proposed Class Counsel Fees Should Be Approved

It is well established that "attorneys who create a common fund to be shared by a class are entitled to an award of fees and expenses from that fund as compensation for their work." *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 585 (2d Cir. 2008) (internal quotation omitted). "Fees and expenses are paid from the common fund so that all class members contribute equally towards the costs associated with litigation pursued on their behalf." *Id.* The award of attorneys' fees has the three-fold benefit of (1) "providing just compensation," (2) "encourag[ing] skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons," and (3) "discourag[ing] future misconduct of a similar nature." *Id.*

### 1.  Class Counsel Is Entitled to Attorneys' Fees of 33% of the Settlement Amount

Per Plaintiff's Motion for Preliminary Approval and Class Counsel's retainers with the Named Plaintiffs, Class Counsel requests $400,000.00 as attorneys' fees, equal to 33% of the Qualified Settlement Fund of $1,200,000.00. Avshalumov Decl. ¶ 48. Class Counsel provided in the Motion for Preliminary Approval that it would petition the Court for "reimbursement of their reasonable litigation costs and expenses from the Settlement Amount" and seek "no more than one-third of the after-costs Settlement Amount" in attorneys' fees. ECF No. 48. The Court approved this. *See* ECF No. 87. Defendants do not oppose Class Counsel's application to the Court for attorneys' fees.

The request for attorneys' fees of 33% of the QSF, is also within a reasonable range for wage-and-hour cases that has been approved by federal district courts in New York State. *See, e.g., Kochilas v. Nat'l Merchant Servs., Inc.*, No. 14 Civ. 311, 2015 WL 5821631, at *8 (E.D.N.Y. Oct. 2, 2015) (finding class counsel's request in FLSA/NYLL case for one-third of Settlement Fund "reasonable and consistent with the norms of class litigation" in the Second Circuit); *Flores*, 2014 WL 321831, at *8 (same).

Class Counsel requests these fees based on the substantial amount of work performed and the significant risk that it undertook in prosecuting the Action purely on a contingency fee basis. Avshalumov Decl. ¶ 41. If the Action resulted in no recovery, Class Counsel would have recovered no fees and lost its costs incurred. *See id.*

**2.      The Percentage Method Is the Preferred Method For Awarding Attorneys' Fees in Common Fund Cases in the Second Circuit**

"The trend in this Circuit is toward the percentage method, which 'directly aligns the interest of the class and its counsel and provides a powerful incentive for the efficient

prosecution and early resolution of litigation.'" *See Wal-Mart Stores, Inc.*, 396 F.3d at 121; *see also, e.g.*, *Sierra*, 2015 WL 10912856, at *7 ("The Court finds that the amount of fees requested is fair and reasonable using the 'percentage-of-recovery' method, which is consistent with the 'trend in this Circuit.'") (citation omitted); *Kiefer v. Moran Foods, LLC*, No. 12-CV-756 (WGY), 2014 WL 3882504, at *8 (D. Conn. Aug. 5, 2014) ("In applying the common fund method, the Supreme Court, the Second Circuit, and other Circuit Courts have held that it is appropriate to award attorneys' fees as a percentage of the entire maximum gross settlement fund."); *Clark v. Ecolab, Inc.*, No. 07 Civ. 8623 (PAC), 2010 WL 1948198, at *9 (S.D.N.Y. May 11, 2010) (approving "fee award of one-third" of fund as "consistent with the Second Circuit's decision in *Arbor Hill*" and *Goldberger* factors). "The percentage-of-the-fund method also promotes early resolution" by "discourag[ing] plaintiffs' lawyers from running up their billable hours, one of the most significant downsides of the lodestar method." *Donnelly*, 2014 WL 12769046, at *8.

Class Counsel's request for one-third of the Settlement Fund is reasonable and "consistent with the norms of class litigation in this circuit." *Diaz v. E. Locating Serv. Inc.*, No. 10 Civ. 4082, 2010 WL 5507912, at *3 (S.D.N.Y. Nov. 29, 2010) (quoting *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008)); *see also deMunecas*, 2010 WL 3322580, at *8 (granting class counsel 33% of settlement fund in wage and hour class action); Clark, 2010 WL 1948198, at *8-9 (awarding class counsel one-third of settlement fund in wage and hour class action); *Duchene v. Michael Cetta, Inc.*, No. 06 Civ.4576, 2009 WL 5841175, at *3 (S.D.N.Y. Sept. 10, 2009 (awarding class counsel 32.2% of $3,150,000 fund in FLSA and NYLL case); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, No. 06 Civ.

4270, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (awarding 33% of $3,265,000 fund in FLSA and NYLL case); *Stefaniak v. HSBC Bank USA, N.A.*, No. 05 Civ. 720S, 2008 WL 7630102, at *3 (W.D.N.Y. June 28, 2008) (awarding 33% of $2.9 million fund in FLSA and NYLL case); *Maley v. Del Global Tech. Co.*, No. 00 Civ. 8495, 186 F. Supp. 2d 358, 370 (awarding 33 1/3% fee on fund valued at $11.5 million); *Cohen v. Apache Corp.*, No. 89 Civ. 76, 1993 WL 126560, at *1 (S.D.N.Y. Apr. 21, 1993) (awarding 33 1/3% of $7.75 million fund).

Moreover, "[i]n choosing the proper baseline for calculation of fee percentage, our Circuit case law directs courts to focus on fairly compensating counsel for work actually performed, given that 'the entire fund, and not some portion [of it], is created through the efforts of counsel at the instigation of the entire class. An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available, whether claimed or not.'" *Alleyne v. Time Moving and Storage, Inc.*, 264 F.R.D. 41, 58-59 (E.D.N.Y. 2010) (citing and quoting *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d. Cir.2007)) (internal quotes omitted). *Kochilas v. Nat'l Merch. Servs., Inc.*, Civil Action No. 1:14-cv-00311, at *15 (E.D.N.Y. Oct. 2, 2015).

Here, all factors from *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 50 (2d Cir. 2000), favor approval of the fees Class Counsel requests.

### 1. Class Counsel's Time and Labor (*Goldberger* Factor 1)

Class Counsel spent over two years from the filing of the Complaint litigating this matter, including defending a motion to dismiss, conducting discovery, engaging in settlement negotiations, reaching a resolution and drafting the necessary settlement

documents. In the process, Class Counsel attended numerous court conferences and a half-day-long mediation session. Class Counsel spent months reviewing hundreds of pages of records, negotiating the Settlement, researching the claims, calculating damages, discussing the claims and defenses with Opt-In Plaintiffs, communicating and interviewing Opt-in Plaintiffs, drafting the Settlement Agreement with its exhibits, drafting the motions for preliminary and final approval of the settlement, and discussing and answering questions about the Settlement with Class Members. Avshalumov Decl. ¶¶ 13. *See, e.g.*, *Cohan v. Columbia Sussex Mgmt., LLC*, No. 12 Civ. 3203 (AT), 2018 WL 4861391, at *3 (E.D.N.Y. Sept. 28, 2018) (acknowledging that Plaintiffs' counsel "reviewing voluminous files of ESI" and "successfully prosecut[ing] a motion for collective action certification" supported the first *Goldberger* factor); *Castagna v. Madison Square Garden, L.P.,* No. 09 Civ. 10211, 2011 WL 2208614, at *10 (S.D.N.Y. June 7, 2011) (acknowledging Plaintiffs' counsel having "litigated th[e] entire case from its investigatory stage through settlement and th[e final approval] motion" fulfilled first *Golberger* factor).

**2.      Magnitude and Complexity of the Litigation (*Goldberger* Factor 2); Risk of Litigation (*Goldberger* Factor 3)**

The second and third *Goldberger* factors—the magnitude, complexity, and the risk of the litigation—also support approval of the fees requested. *See Goldberger*, 209 F.3d at 50. The Action has been ongoing for over two-and-a-half years and involves wage-and-hour issues on a complex class and collective action hybrid basis under the NYLL and FLSA. "FLSA claims typically involve complex mixed questions of fact and law. . . . These statutory questions must be resolved in light of volumes of legislative

history and over [seven] decades of legal interpretation and administrative rulings." *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981); *see also Karic*, 2016 WL 1745037, at *5 ("[C]lass actions, especially in the context of FLSA claims, are inherently complex."). Moreover, as noted, risks in this litigation were significant. Class Counsel aggressively litigated this case against multiple defendants and represented more than 100 Class Members in various positions purely on a contingency basis. "Class and collective wage and hour cases of this type are, by their very nature, complicated and time-consuming. Lawyers undertaking representation of large numbers of affected employees in such actions inevitably must be prepared to make a tremendous investment of time, energy and resources." *Johnson*, 2011 WL 4357376, at *17. Furthermore, "[u]ncertainty that an ultimate recovery will be obtained is highly relevant in determining the reasonableness of an award." *See id*. (citation omitted).

### 3.    Quality of Representation (*Goldberger* Factor 4)

The fourth *Goldberger* factor, the quality of the representation, favors approval of the fees requested. *Goldberger*, 209 F.3d at 50. Class Counsel is greatly experienced in litigating wage-and-hour actions. Avshalumov Decl. ¶ 46 *see also Surdu*, 2018 WL 1474379, at *12 ("To determine the 'quality of the representation,' courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit.") (quoting *Taft v. Ackermans*, No. 02 Civ. 7951 (PKL), 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007)). The Parties reached a settlement of $1,200,000.00 for over 100 Class Members at the September 19, 2019 mediation. Class Counsel having "substantial experience in wage and hour class and collective action cases" is a factor that supports counsel's request for attorneys' fees of 33% of the settlement fund. *See*

*Sukhnandan v. Royal Health Care of Long Island LLC*, No. 12 Civ. 4216 (RLE), 2014 WL 3778173, at *12–13 (S.D.N.Y. July 31, 2014).

### 4.    Fee in Relation to the Settlement (*Goldberger* Factor 5)

In light of the substantial recovery for Class Members here, the fee requested in relation to the settlement, the fifth *Goldberger* factor, is reasonable and consistent with fees regularly awarded by courts in this circuit. *See Karic*, 2016 WL 1745037, at *8 ("Courts in this Circuit often approve requests for attorneys' fees amounting to 33.3% of a settlement fund."); *Hernandez*, 2013 WL 1209563, at *8 (granting attorneys' fees of 33% from the $2,310,000 settlement fund in a wage-and-hour action); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 178, 187 (W.D.N.Y. 2011) (awarding 33% in attorneys' fees from a $42 million settlement and approving a lodestar multiplier of 5.3); *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1132 (ENV)(RER), 2011 WL 754862, at *6–7 (E.D.N.Y. Feb. 18, 2011) (awarding one-third from a $7.675 million settlement in attorneys' fees in FLSA and NYLL wage- and-hour action).

Class Counsel's fee requested should be calculated as a percentage of the gross settlement made available to the Class. The Second Circuit is clear that "[a]n allocation of fees by percentage should . . . be awarded on the basis of the total funds made available." *Behzadi*, 2015 WL 4210906, at *2 (quoting *Masters v. Wilhelmina Model Agency, Inc.*, 573 F.3d 423, 437 (2d Cir. 2007)); *see also Cohan*, 2018 WL 4861391, at *4 (approving attorneys' fees calculated as a percentage of the "'entire settlement fund, including the amount that will revert' to defendant"); *Diaz v. E. Locating Serv., Inc.*, No. 10 Civ. 04082, 2010 WL 5507912, at *8 (S.D.N.Y. Nov. 29, 2010) (same). "The value of

legal service rendered in the creation of a settlement fund [is not] diminished by the failure of beneficiaries to cash in, regardless of what happens to the surplus." *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 59 (E.D.N.Y. 2010). The reduced fee requested also "reflects Class Counsel's good faith." *See, e.g.*, *Cohan*, 2018 WL 4861391, at *4.

### 5.    Public Policy Considerations (*Goldberger* Factor 6)

Last, approving the fees requested is consistent with public policy, the sixth *Goldberger* factor. *See, e.g.*, *Caballero v. Senior Health Partners, Inc.*, No. 16 Civ. 0326 (CLP), 2018 WL 6435900, at *6 (E.D.N.Y. Dec. 7, 2018) ("[T]he public policy goal of providing an incentive for lawyers to take on complicated actions that assisted vulnerable communities is furthered by the attorneys' fee award in this case."); *Donnelly*, 2014 WL 12769046, at *7 ("[P]ublic policy favors a common fund attorneys' fee award in wage and hour class action lawsuits."). The "FLSA and state wage and hour statutes are remedial statutes, the purposes of which are served by adequately compensating attorneys who protect wage and hour rights." *Flores*, 2014 WL 321831, at *8. In FLSA and NYLL actions, attorneys take on the role of "private attorneys general," who must be "adequately compensated or their efforts." *Zeltser v. Merrill Lynch & Co.*, No. 13 Civ. 1531 (FM), 2014 WL 4816134, at *8 (S.D.N.Y. Sept. 23, 2014). "Adequate compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the FLSA and [state wage and hour laws]." *Surdu*, 2018 WL 147379, at *12 (quoting *Henry*, 2014 WL 2199427, at *6). Therefore, public policy considerations strongly weigh in favor of approving this fee request. *See, e.g.*, *Cohan*, 2018 WL 4861391, at * 5 (stating "public policy weighs in favor of approving th[e] fee award [of

30% from the settlement fund], as is reflected in the prevailing trend for percentage-of-fund fee awards").

Class Counsel will continue to expend time on this case by, *inter alia*, preparing for and attending the Fairness Hearing, answering questions from Class Members, and corresponding with the Claims Administrator and defense counsel. Accordingly, public policy considerations support Class Counsel's requested attorneys' fees.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court grant this Motion in its entirety and enter the proposed Final Approval Order.

Dated: Kew Gardens, New York
       July 14, 2020

HELEN F. DALTON & ASSOCIATES, P.C.

By: _____/s/_____
       Roman Avshalumov, Esq.
       James O'Donnell, Esq.
       Helen F. Dalton & Associates, P.C.
       80-02 Kew Gardens Road, Suite 601
       Kew Gardens, NY 11415
       Telephone: 718-263-9591
       Fax: 718-263-9598

29